UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-25607-JB

RAYMUNDO ALBERTO FUENMAYOR
PEROZO, an individual; BERENICE
SOTELO GODOY, an individual; MATTEO
FUENMAYOR SOTELO, and DANNA
PAOLA FUENMAYOR SOTELO, an individual

      Plaintiffs,

v.

JOSEPH B. EDLOW, Director of U.S.
Citizenship and Immigration Services; KRISTI
NOEM, Secretary of U.S. Department of
Homeland Security, U.S. DEPARTMENT OF
HOMELAND SECURITY; PAMELA BONDI,
Attorney General of the United States; and
JASON A. REDING QUIÑONES, United States
Attorney for the Southern District of Florida

      Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EXPEDITED MOTION
FOR PRELIMINARY INJUNCTION AND INCORPORATED
<u>MEMORANDUM OF LAW [DE 18]</u>**

Defendants by and through the undersigned Assistant United States Attorney, hereby file its Response to Plaintiff's Expedited Motion for Preliminary Injunction and Incorporated Memorandum of Law [DE 18] and state in support thereof as follows:

I.       INTRODUCTION

Plaintiffs, Raymundo Alberto Fuenmayor Perozo, Berenice Sotelo Godoy, Matteo Fuenmayor Sotelo, and Danna Paola Fuenmayor Sotelo request that this Court grant preliminary injunctive relief and enjoin Defendants' hold on decisions with respect to the following applications: Form I-526E (Immigrant Petition by Regional Center Investor); Form I-485 (Application to Register Permanent Residence or Adjust Status); Form I-765 (Application for Employment Authorization); and Form I-131 (Application for Travel Documents, Parole Documents, and Arrival/Departure Records) (collectively referred to as "Immigration Benefit Applications"). *See* [DE 18, p. 1-2].

At issue is U.S. Citizenship and Immigration Service's ("USCIS") recent policy change which in part places a hold on applications for immigration benefits for individuals from certain countries. Specifically, on December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* ("December 2, 2025 Policy Memorandum"). *See* [DE 23-1]. The December 2, 2025 Policy Memorandum, in relevant part, placed a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and other National Security and Public Safety Threats*. *Id; see also* [DE 23-2].

The December 2, 2025 Policy Memorandum applies to this case, as Plaintiff, Raymundo Alberto Fuenmayor Perozo ("Fuenmayor Perozo") is a citizen and national of Venezuela, one of the 19 countries listed in Presidential Proclamation 10949. *Id*. Here, Plaintiff, Fuenmayor Perozo is the petitioner for the pending Form I-526 which allows for the remaining Plaintiffs to apply for derivative benefits. *See* [DE 18, ¶ 9]. The December 2, 2025 Policy Memorandum mandates "that

2

all aliens meeting these criteria go through a thorough re-review process, including a potential interview and, if necessary, a re-interview, to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility. An individualized, case-by-case review and assessment will be done of all relevant information and facts." [DE 23-1, p. 2].

On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." ("January 1, 2026 Policy Memorandum"). *See* [DE 23-3]. The January 1, 2026 Policy Memorandum in relevant part, placed a hold on all pending benefit requests for aliens from countries listed in Presidential Proclamation 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect The Security of the United States. Id.* The January 1, 2026 Policy Memorandum also applies to this case, as Plaintiff, Fuenmayor Perozo is a citizen and national of Venezuela, one of the 39 countries listed in Presidential Proclamation 10998. *See* [DE 23-4]. This January 1, 2026 Policy Memorandum did not supersede the guidance in the Decemter 2, 2025 Memorandum, except as specified under the "Exceptions to the Adjudication Hold." [DE 23-3, p. 2]. Plaintiffs do not fit within the exceptions to the adjudication hold set out in the January 1, 2026 Policy Memorandum.

In sum, Plaintiffs seek injunctive relief pursuant to Federal Rule of Civil Procedure 65 and request that the Court enjoin Defendants from applying a hold to Plaintiffs' Immigration Benefits Applications with adjudication to occur within 30 days. [DE 18, p. 20].

## II.     ARGUMENT

### A. Standard

In order to obtain the extraordinary remedy of a preliminary injunction, a plaintiff must prove: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Because a preliminary injunction is "an extraordinary and drastic remedy", it should not be granted unless the plaintiff "clearly carries the burden of persuasion as to the four prerequisites*.*" *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (citation and internal quotations marks omitted).

### B. Standing

As a preliminary matter, Plaintiff, Raymundo Alberto Fuenmayor Perozo ("Fuenmayor Perozo"), the principal applicant, has failed to establish standing. The Eleventh Circuit described standing as a threshold jurisdictional question which requires courts to assess whether they have the power to entertain suit. *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022). Therefore, in order to bring a claim in federal court, a plaintiff must establish standing under Article III's "case-or-controversy requirement." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Pursuant to this requirement, Plaintiff must show throughout the course of litigation: (1) an injury in fact; (2) fairly traceable to the challenged conduct; and (3) that is likely to be redressed by the relief requested. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). Here, the relief requested is that this Court order USCIS to adjudicate Plaintiffs' immigration benefits application when the December 2, 2025 and January 1, 2026 Policy Memoranda prevent USCIS from adjudicating

same. *See generally* [DE 23-1, DE 23-2]. The December 2, 2025 and January 1, 2026 Policy Memoranda were issued in response to a national security incident and constitute intervening facts that directly impact this litigation.

Because Plaintiff cannot prove redressability, the Court is without jurisdiction to order the relief sought under the current hold ordered by USCIS's Director at the behest of the President. As the Supreme Court explained in *Chaney*, the "recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." 470 U.S. 821, 831 (1985). So too here, the question of management of the lawful immigration system and protecting it from national security threats is committed to the political branches of government. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001); *Mathews v. Eldridge*, 426 U.S. 67, 81 ("[a]ny rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution"), and is an area that the courts are not suited to review. *See Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024) (noting that immigration is "an area unsuited to rigorous judicial oversight"); *Ameziane v. Obama*, 699 F.3d 488, 494 (D.C. Cir. 2012) ("[i]t is not within the role of the courts to second-guess executive judgments made in furtherance of" acquiring and exercising expertise of protecting national security by the executive").

The Secretary of Homeland Security ("Secretary") is charged with carrying out the mission of the Department of Homeland Security ("DHS"). *See* 6 U.S.C. §§ 111(b) (mission of DHS), 112 (functions of the Secretary). The Secretary is also "charged with the administration and enforcement of [the Immigration and Nationality Act] and all other laws relating to the immigration and naturalization of aliens" and "shall . . . issue such instructions; and perform such

5

other acts as he deems necessary for carrying out his authority under the provisions of this Act." 8 U.S.C. §§ 1103(a)(1), (3). The Secretary's authority to manage the lawful immigration system is delegated to the Director of USCIS. DHS's Delegation to the Bureau of Citizenship and Immigration Services, Delegation No. 0150.1 (Jun. 5, 2003) (Delegation 0150.1), available at https://www.hsdl.org/c/view?docid=234775 (last accessed Feb. 20, 2026); *see also* 6 U.S.C. § 271 (establishing USCIS and its mission).

The Director is acting within the authority delegated to him from the Secretary to "issue such instructions" and "perform such other acts as he deems necessary", 8 U.S.C. § 1103(a)(3) (emphasis added), in order to fulfill the Congressional mandate to "reduce the vulnerability of the United States to terrorism . . . ". 6 U.S.C. § 111(b)(1)(B); *see also* Codification of Certain U.S. Citizenship and Immigration Services Law Enforcement Authorities, 90 Fed. Reg. 42797, 42798-800 (Sep. 5, 2025) (discussing USCIS's national security and public safety missions). Accordingly, the current hold on such adjudications is a discretionary action by the Executive Branch, and the Court lacks jurisdiction to compel any action to the contrary. As such, Plaintiff lacks standing because the redressability element cannot be satisfied.

### C. Plaintiffs Cannot Show a Substantial Likelihood of Success on the Merits

*1. Plaintiffs will not be successful as to Count I: 28 U.S.C.§ 1361, Writ of Mandamus.*

The Mandamus Act provides that district courts shall have original jurisdiction of any action to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff. 28 U.S.C. § 1361. Mandamus relief is appropriate when (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available. *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003). A writ of mandamus is an extraordinary remedy that is available when plaintiff has exhausted all other

avenues of relief and only if the defendant owes a clear, non-discretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). However, when the defendant has failed to perform a *discretionary* act, mandamus relief is unavailable to the plaintiff. *See Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).

In Plaintiffs' Count I to the Amended Complaint, they direct this Court to 8 U.S.C. § 1571 stating that it is "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180-days". [DE 17, ¶ 94]. Specifically, § 1571 states that "[i]t is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days after the initial filing of the application . . . . " 8 U.S.C. § 1571(b) (emphasis added). The Eleventh Circuit has held that "should" is "permissive, rather than mandatory, language." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). Therefore, the "sense of Congress" language in 8 U.S.C. § 1571(b) is in no way binding on Defendants or this Court. *See, e.g.*, *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (11th Cir. 2023) (discussing how Section 1571(b) does not plainly prescribe a duty to adjudicate a petition within a specific timeframe and the statute's use of "should" is not "must"; therefore, Plaintiff failed to plead any right to mandamus relief or that Defendants owed a clear duty);

Because Plaintiffs fail to establish the Mandamus Act provides an independent basis for jurisdiction, this claim should be dismissed under Rule 12(b)(1). *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419 (11th Cir. 2009)(affirming district court conclusion that the Mandamus Act provides no basis for jurisdiction where the action complained of is discretionary); *Tetelain v. Jaddou,* no. 23-60742-CIV, 2023 WL 9787562, at *3 (S.D. Fla. Nov. 27, 2023) ("Plaintiff, therefore, has no clearly defined right and Defendant has no clear duty to act within a

certain timeframe. The first two requirements for mandamus jurisdiction are not present. The Court, therefore, lacks jurisdiction under the Mandamus Act to compel Defendant to act.").

Lastly, Plaintiffs fail to establish that no other adequate remedy is available because they have brought forth an Administrative Procedure Act ("APA") claim in addition to requesting mandamus relief. *See Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011)("The availability of relief under the Administrative Procedure Act … forecloses a grant of writ of mandamus."). Therefore, the Court lacks subject matter jurisdiction over Plaintiffs' mandamus claim because there is no clear, non-discretionary duty to adjudicate the pending Immigration Benefit Applications within a designated timeframe.

> 2. *Plaintiffs are unlikely to succeed on Count II: Administrative Procedure Act, 5 U.S.C. § 555(b), § 706(1), et. seq.*

The withholding of adjudication as to Plaintiffs' Immigration Benefit Applications is lawful as it does not preclude an applicant's eligibility for relief, but simply involves a more rigorous vetting of applicants from high-risk countries to ensure national security. Similarly, Plaintiffs' unreasonable delay claim fails because absent the hold, the amount of time the Immigration Benefit Applications have been pending is not unreasonable. To proceed on a claim of unreasonable delay, a plaintiff must assert that an agency has failed to take a discrete action that it is required to take. *See Norton v. S. Utah Wilderness All.* 542 U.S. 55, 64 (2004). However, APA review is unavailable when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

The APA merely provides the standards for reviewing agency action once jurisdiction is otherwise established. *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 282 (9th Cir. 1988). If the Court finds jurisdiction under another provision, judicial review under the APA "is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge

the agency's use of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "If no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id*. No statutory or regulatory provisions provide a "meaningful standard" to review how long it should take to adjudicate the Immigration Benefit Applications at issue in this matter. Because there is no statute or regulation providing a timeframe for completion of the adjudication process (as it relates to the pending Forms I-526, I-485, I-765 and I-131), there is no standard against which the Court can measure whether the agency has acted "within a reasonable time" or "unreasonably delayed adjudication." 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).

Of note, the primary application submitted by Plaintiff, Fuenmayor Perozo or Form I-526E, (Immigrant Petition by Regional Center Investor) has been pending since April 30, 2025. *See* [DE 17, ¶ 31]. Claims of unreasonable delay in the context of an I-526E petition support that the amount of time in which Plaintiff, Fuenmayor Perozo's petition has been pending is *reasonable*. *See, e.g., Osechas Lopez v. Mayorkas*, No. 22-CIV-21733, 2023 WL 152640, at *3 (S.D. Fla. Jan. 10, 2023)(granting motion to dismiss and finding no unreasonable delay in adjudication of an I-526 petition pending approximately 27.5 months); *Otto v. Mayorkas*, No. 8:22-CV-1172-WFJ-SPF, 2023 WL 2078270, at *3 (M.D. Fla. Feb. 17, 2023)(granting motion to dismiss and finding no unreasonable delay in adjudication of an I-526 petition pending 35 months at time complaint was filed); *Sabah v. Emmel*, No. 22-cv-24192-Gayles, 2023 U.S. Dist. LEXIS 208333, *7 (S.D. Fla. Nov. 21, 2023)(granting motion to dismiss and finding that the I-526E petition pending for 37 months at the time of the complaint being filed was not unreasonable).

Assuming arguendo Plaintiffs had been able to show an unreasonable delay, Plaintiffs still have not alleged sufficient prejudice to state a claim under 5 U.S.C. § 706. The Amended

Complaint alleges that Plaintiffs have been significantly harmed by the hold of adjudication as to their Immigration Benefit Applications. *See* [DE 17, ¶ 62]. Plaintiffs allege without employment authorization documents or green cards, their lives would be disrupted, and they would face significant obstacles in planning for their future. *Id.* Plaintiffs also state without green cards or advance parole, they are unable to engage in temporary travel outside of the United States. *Id.* Indeed, "uncertainty and the ability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Osechas Lopez*, No. 2023 WL 152640, at * 3.

Plaintiffs also ask this Court to apply the six-factor balancing test as set forth in *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter referred to as "*TRAC*"), in order to determine whether agency delay was unreasonable. The *TRAC* factors are as follows:

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Defendants do not agree that a TRAC factor analysis is appropriate at this stage because the issue is no longer about whether any delay is unreasonable given mutually exclusive agency duties competing for limited resources. Nonetheless, Defendants will briefly address each factor. The first and second *TRAC* factors are typically examined together, but of the two factors, the first—whether a 'rule of reason' guides the agency — is the most important." *Osechas Lopez*, 649 F. Supp. 3d at 1288(internal citations omitted). Plaintiffs argue that they have waited far beyond

10

normal processing timeframes. [DE 18, p. 8-9]. Plaintiffs cite to USCIS' historical median processing times[1] identifying the following adjudication timelines: (i) Form I-485 employment-based applications: 7.2 months; (ii) Form I-765 category (c)(9): 2.2 months; (iii) Form I-131: 6 months. [DE 18, ¶ 9]. None of these processing times are an absolute measure of how long an individual case will take to be completely adjudicated as noted by USCIS' processing times webpage (which is distinct from the webpage provided by Plaintiffs).[2] Thus, the Policy Memoranda creates an additional layer of review as it pertains to the immigration benefit applications, which is unique to Plaintiffs' case. Additionally, USCIS generally adjudicates I-526E, I-485, I-765, and I-131 applications in the order they are received as reflected in USCIS' processing times webpage.

While Plaintiffs argue the Policy Memoranda create an indefinite suspension, on the face of the memoranda, the contrary is suggested. The December 2, 2025 Policy Memorandum states that within "90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." [DE 23-1, p. 4]. Similarly, The January 1, 2026 Policy Memorandum also references this 90-day period. [DE 23-2, p. 5]. The national security incidents giving rise to the hold cannot be disputed and constitute a rational basis for additional

---

[1] When reviewing the link provided by Plaintiffs: https://egov.uscis.gov/processing-times/historic-pt (last visited February 23, 2026), it is also stated on this website that "[h]istorical processing times are not comparable to the processing times posted on the USCIS processing times webpage (https://egov.uscis.gov/processing-times/) for certain form types due to different methodologies.
[2] *See* https://egov.uscis.gov/processing-times/ (last visited February 23, 2026). When selecting from the "Form" drop down menu each application at issue in this matter regardless of field office or service center selected, the following is stated: "[w]e generally process cases in the order we receive them. This processing time is based on how long it took us to complete 80% of adjudicated cases over the past six months. Each case is unique, and some cases may take longer than others. Processing times should be used as a reference point, not an absolute measure of how long your case will take to be completed."

vetting to be conducted when reviewing pending immigration benefit applications. The first *TRAC* factor favors Defendants as a rule of reason has been applied for which Plaintiffs have not established to be unreasonable.

The second *TRAC* factor requires courts to look at whether Congress provided a timetable. *TRAC*, 750 F.2d at 80. Plaintiffs' reliance on the 180-day timeline referenced in 8 U.S.C. § 1571 [DE 18, p. 9] as to the adjudication of immigration benefit applications is merely aspirational, which is discussed in Section C1 of this response. Considering the hold is not indefinite, and the 180-day timeline is not mandatory, the second *TRAC* factor weighs in Defendants' favor.

The third and fifth *TRAC* factors are related and together examine " 'the nature and extent of the interests prejudiced by the delay,' including whether 'human health and welfare' might be implicated." *TRAC*, 750 F.2d at 80. "Welfare generally involves a significant risk of material impairment where there is current and actual danger to the health of the individual and the health of their progeny." *Khushnood v. U.S. Citizenship & Immigr. Servs.*, No. 21-2166 (FYP), 2022 WL 407152, at *4 (D.D.C. Feb. 10, 2022) (cleaned up). Plaintiffs argue that without employment authorization or lawful permanent residency they face the loss of health insurance; closure of bank accounts; exhaustion of savings due to no income; inability to secure employment; denied access to higher education; lack of issuance/renewal of driver's licenses, and prohibition against traveling which would allow them to see relatives. [DE 18-1, p. 3, 5, 8, 10]. Much of Plaintiffs' alleged injuries are economic in nature, which is insufficient to weigh in favor of finding unreasonable delay. *See Nascimento v. U.S. Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. Aug. 30, 2023)(internal citations omitted).

The fourth *TRAC* factor – "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80 – strongly favors Defendants. This factor

12

has also been found to be dispositive in denying relief. *See, e.g.*, *Echeverri v. United States Citizenship & Immigr. Servs.*, No. 23-CV-21711-RAR, 2023 WL 5350810, at *7 (S.D. Fla. Aug. 21, 2023). Plaintiffs are not in the position to determine the management of a lawful immigration system and protecting it from national security threats whereas that is a task committed to the political branches of government. *See Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001); *Mathews v. Eldridge*, 426 U.S. 67, 81.

With respect to the sixth *TRAC* factor, Plaintiffs allege impropriety or bad faith by the agency. *See TRAC*, 750 F.2d at 80 (cleaned up). Plaintiffs reference the Department of Homeland Security's post on December 31, 2025 via social media platform "X" as romanticizing the idea of 100 million deportations. [DE 18, p. 11]. However, Plaintiffs' highlighting of an isolated post does not undermine that USCIS applies a reasoned approach to adjudicating the immigration benefit applications at issue, generally in the order received, and applying comprehensive reviews to applicants impacted by the Policy Memoranda.

In balancing the *TRAC* factors, it can be concluded that there has not been unreasonable delay in the adjudication of Plaintiffs' Immigration Benefit Applications.

> 3. *Plaintiffs are unlikely to succeed on Count III: Agency Action that is Arbitrary, Capricious, and Abuse of Discretion, or otherwise not in Accordance with Law, 5 U.S.C. § 706(2)(A).*

In Count III of the Amended Complaint, Plaintiffs rely upon *Pacito v. Trump*, 768, F. Supp 3d 1199 (W.D. Wash. 2025) for the proposition that Defendants' decision to withhold adjudication is arbitrary and capricious. [DE 17, ¶ 111]; [DE 18, p. 12].

At issue in *Pacito* was the President's temporary suspension regarding the admission of refugees pending a determination that further entry into the United States of refugees aligns with the interests of the United States. Exec. Order No. 14163, *Realigning the United States Refugee*

*Admissions Program*, 90 Fed. Reg. 8,459 (Jan. 20, 2025) §§ 1, 4. The President also issued a 90-day pause in foreign development assistance to assess programmatic efficiencies, and to ensure that all foreign aid is consistent with foreign policy. *See* Exec. Order No. 14,169, *Reevaluating and Realigning United States Foreign Aid*, 90 Fed. Reg. 8,610 (Jan. 20, 2025) §§ 2, 3. In turn, foreign aid related to the United States Refugee Admissions Program was paused. Ultimately, the district court issued a preliminary injunction in favor of Plaintiffs on February 28, 2025, thereby prohibiting enforcement of Executive Order 14163. *Id.* at 1210. The government has appealed the district court's preliminary injunction which is now pending before the Ninth Circuit. *Pacito et al. v. Trump et al.*, No. 25-cv-00255-JNW, DE 46. On September 12, 2025, the Ninth Circuit issued a preliminary ruling staying the district court's injunction in its entirety except as otherwise noted. *Pacito et al. v. Trump et al.*, No. 25-1313 (9th Cir.), DE 149, p. 8. The order also explained in part that the government is likely to prevail on plaintiffs' challenge to the validity of Executive Order No. 14163's suspension of refugee admissions due to the authority vested by § 1182(f). *See id.* at 11-12. A full opinion remains forthcoming from the Ninth Circuit.

      First, the *Pacito* case does not address the Policy Memoranda discussed here. Nevertheless, central to the *Pacito* case, is the executive authority given to the President pursuant to 8 U.S.C. § 1182(f), in suspending or restricting the entry of aliens. Here, the President exercised such authority through Presidential Proclamations 10949 and 10998 when imposing restrictions, limitations, and exceptions on the entry of aliens deemed detrimental to U.S. interests. Numerous Presidents have invoked § 1182(f) to suspend or impose restrictions on the entry of certain aliens or classes of aliens[3], and the Supreme Court has repeatedly upheld the broad and virtually

---

[3] *See, e.g.*, Presidential Proclamation No. 5517, 51 Fed. Reg. 30470 (Aug. 22, 1986)(President Reagan); Exec. Order No. 12,807, 57 Fed. Reg. 23133 (May 24, 1992)(President H.W. Bush); Presidential Proclamation No. 6958, 61 Fed. Reg. 60007 (Nov. 22, 1996)(President Clinton); Presidential Proclamation

unreviewable sweep of this authority. *See, e.g., Hawaii*, 585 U.S. at 684 (explaining that the "sole prerequisite set forth in § 1182(f) is that the President 'find []' that entry of the covered aliens 'would be detrimental to the interests of the United States.'").

> 4. *Plaintiffs are unlikely to Succeed on Count 4: Agency Action without Observance of Procedure Required by Law in Violation of 5 U.S.C. 706(2)(D) and Count 7: Ultra Vires.*

The Court may set aside an agency action only if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C). Plaintiffs argue that Defendants acted unlawfully without allowing for notice-and-comment under the APA and the Policy Memoranda are ultra vires. [DE 17, ¶¶ 116, 135]. The President was not required to engage in notice-and-comment rulemaking, as he has broad authority under the Constitution and the INA to suspend and impose restrictions on the entry of aliens, which was then delegated to the agencies to implement. *See Hawaii*, 585 U.S. at 683-84. Further, the decision behind the Policy memoranda to place a hold on adjudication is procedural, in nature, and not substantive, hence falling within the exceptions to the notice and comment period. *See* 5 U.S.C.§553(b)(3)(A) (stating that APA rulemaking does not apply … to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.").

Plaintiffs call upon this Court to apply the *Pacito* analysis here by finding the Policy Memoranda ultra vires and not permitted under INA § 212(f), 8 U.S.C. §1182(f). *See* [DE 17, ¶ 135]. As discussed above, the Ninth Circuit has already issued a preliminary ruling in *Pacito* stating that the government will likely prevail on the validity of the Executive Order issued consistent with the authority permitted under § 1182(f). Thus, Plaintiffs' reliance on the district

---

No. 8342, 74 Fed. Reg. 4093 (Jan. 21, 2009)(President W. Bush); Presidential Proclamation No. 8693, 76 Fed. Reg. 44751 (July 24, 2011)(President Obama).

court decision in the *Pacito* case is misplaced and Defendants have not exceeded statutory authority.

> 5. *Plaintiffs are unlikely to succeed on Count 5: Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A) and Count 6: Equal Protection, Fifth Amendment of the U.S. Constitution.*

Plaintiffs argue that they have a right to be free from discrimination based on their ethnicity and national origin pursuant to 8 U.S.C. §1152(a)(1)(A). *See* 8 U.S.C. § 1152(a)(1)(A) ("[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."); *see also* [DE 17, ¶ 123]. Plaintiffs also contend the Policy Memoranda discriminate based on national origin – a suspect classification and is not narrowly tailored to serve a compelling governmental interest, hence violating the equal protection component of the Fifth Amendment. [DE 17, ¶ 127]. Again, the Policy Memoranda simply creates a vetting process for those individuals from high-risk countries. There is nothing to suggest from the Policy Memoranda that a denial of any immigration benefit should be expected because of an individual's national origin. The fact there are exceptions to the adjudication hold, although not applicable to Plaintiffs' case, further supports this point.

### D. Plaintiffs Cannot Show Irreparable Injury will be Suffered unless the Injunction Issues.

Plaintiffs allege that they will suffer irreparable injury because without employment authorization or lawful permanent residency, the impacts are both personally and professionally disruptive as discussed in Section C2 of this response. However, irreparable injury must be *likely* in the absence of an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)(emphasis in original). Plaintiffs have not satisfied this requirement. Even if the USCIS hold was lifted today, there is no guarantee that Plaintiffs' applications would be adjudicated in time to

avoid what is an inherent risk of the immigration process – uncertainty as to the ability to move forward with life.

### E. Petitioner Cannot Show Threatened Injury Outweighs Whatever Damages the Proposed Injunction May Cause the Opposing Party.

The threatened injury to Plaintiffs does not outweigh the damage the injunction would cause Defendants. An injunction prevents Defendants from thoroughly investigating applicants, including Plaintiffs, for the purposes of ensuring national security and public safety. As a general matter, the Supreme Court has stressed that the government "need[s] . . . flexibility in policy choices rather than the rigidity often characteristic of constitutional adjudication" when it comes to immigration regulation. *Mathews*, 426 U.S. at 81.

### F. If issued, the Injunction would be Adverse to the Public Interest.

Finally, the balance of harms and the public interest elements of the injunctive relief test merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). Here, entry of a preliminary injunction order would run counter to the broader purpose of the policy memoranda, which is to ensure screening and vetting prioritize the safety of the American people. [DE 23-1, p. 2].

### III. CONCLUSION

Based upon the foregoing, Plaintiffs' Expedited Motion for Preliminary Injunction [DE 18] should be denied and the case dismissed in its entirety.

Dated: February 23, 2026                                  Respectfully submitted,

                                                           **JASON A. REDING QUIÑONES**
                                                           **UNITED STATES ATTORNEY**

By:   */s/ Jeanette M. Lugo*
         Jeanette M. Lugo, Esq.
         Assistant U.S. Attorney
         Florida Bar No. 122060
         Email: Jeanette.Bernard@usdoj.gov
         United States Attorney's Office
         101 South U.S. 1, Suite 3100
         Fort Pierce, Florida 34950
         Telephone: 772-293-0352
         Facsimile:  772-466-1020