# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RAYMUNDO ALBERTO FUENMAYOR PEROZO, an individual; BERENICE SOTELO GODOY, an individual; MATTEO FUENMAYOR SOTELO, and DANNA PAOLA FUENMAYOR SOTELO, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services; KRISTI NOEM, Secretary of U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States; and JASON A. REDING QUIÑONES, United States Attorney for the Southern District of Florida<br>Defendants. | Case No.: 1:25-cv-25607-JB |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Raymundo Alberto Fuenmayor Perozo ("Fuenmayor"), Berenice Sotelo Godoy ("Godoy"), Matteo Fuenmayor Sotelo ("Matteo"), and Danna Paola Fuenmayor Sotelo ("Danna") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file their Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("FAC") for Declaratory and Injunctive Relief and Petition for Writ of Mandamus (the "Motion to Dismiss") [ECF No. 23].

## **INTRODUCTION**

Through this action, Plaintiffs, who have all submitted the Immigration Benefits[1] Applications to U.S. Citizenship and Immigration Services ("USCIS"), seek declaratory, injunctive, and mandamus relief against Defendants' hold on decisions on Plaintiffs' Forms: (i) I-526E, *Immigrant Petition by Regional Center Investor* ("Form I-526E"); (ii) I-485, *Application to Register Permanent Resident Status or Adjust Status* ("Form I-485"); I-765, *Application for Employment Authorization* ("Form I-765"); and I-131, *Application for Travel Document (Advance Parole)* ("Form I-131") (collectively, the "Immigration Benefits Applications") that is pursuant to the December 2, 2025 USCIS Policy Memorandum (PM-602-0192), and January 1, 2025 USCIS Policy Memorandum (PM-602-0194) (collectively, the "Policy Memorandums").

This case is about Defendants' legal obligation to adjudicate Plaintiffs' Immigration Benefits Applications, enforceable by the Administrative Procedure Act ("APA") and mandamus judicial review, a duty which Defendants abdicated by the unlawful Policy Memorandums withholding employment authorization, advance parole, adjustment of status, and approval of an EB-5 immigrant visa on the discriminatory basis of nationality.

In their Motion to Dismiss, Defendants essentially argue that their discretion over any and all actions taken towards Plaintiffs' applications is unlimited and unreviewable, superseding the Court's mandamus jurisdiction, the APA, and USCIS regulations. As set out in more detail below, the Court should deny the Motion to Dismiss in its entirety.

---

[1] Plaintiff Fuenmayor is the sole petitioner/filer on Form I-526E, whereas all the Plaintiffs filed Form I-485, Form I-765, and Form I-131.

**MEMORANDUM OF LAW**

**I.     MOTION TO DISMISS STANDARD**

   **A.  Subject-Matter Jurisdiction**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v.* Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Facial attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted)).

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)).  With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Moreover, "**[f]ederal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them.**" *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) (emphasis added). There is a "well-settled" and "strong" presumption in favor of judicial review of administrative action. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020), which courts "consistently" apply to "legislation regarding immigration." *Kucana v. Holder*, 558 U.S. 233, 247 (2010).

B. **Failure to State a Cause of Action**

A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). "In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). "In seeking a dismissal for failure to state a viable claim, a defendant thus bears the '**very high burden**' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1321 (M.D. Fla. 2007) (emphasis added). As set forth in more detail below, Venezuela does not come close to satisfying its very high burden.

Under Fed. R. Civ. P. 12(b)(6), a court shall grant a motion to dismiss where, based upon a **dispositive issue of law**, the factual allegations of the complaint cannot support the cause of action. *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (emphasis added). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, **accepted as true**, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570) (emphasis added).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Twombly*, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ARGUMENT

### A. The Court Has Subject-Matter Jurisdiction Under the APA and Mandamus Act

The Court's subject matter was established by the APA and Mandamus Act claims alleged in the Amended Complaint. Defendants misunderstand the distinction between challenging a discretionary, substantive decision and challenging delays, withholding, and unlawful policies abdicating adjudication.

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Petitioner." 28 U.S.C. § 1361. "Mandamus is proper if (1) the Petitioners can show a clear right to the relief sought; (2) the Respondents have a clear, non-discretionary duty to act;

5

and (3) no other remedy is available." *Nyaga v. Ashcroft*, 323 F.3d 906, 911 (11th Cir. 2003) (citing *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)).

"Contrary to the Respondents' assertions, district courts possess mandamus jurisdiction over petitions to compel the Department of Homeland Security to adjudicate adjustment of status applications within a reasonable time period." *Tjin-A-Tam v. U.S. Dept. of Homeland Sec.*, No. 05-23339-CIV, 2007 WL 781339, at *3 (S.D. Fla. Mar. 12, 2007); *see also lkhatib v. Butler,* 2005 U.S. Dist. LEXIS 22858, No. 04-22407 (S.D. Fla. June 6, 2005). "According to *Yu v. Brown,* all the courts addressing this question have held that [US]CIS **has a non-discretionary duty to process applications** for legal permanent resident status, as well as all other immigration applications". *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1204 (M.D. Fla. 2007) (emphasis added) (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999)). "A duty to *adjudicate* would necessarily include a duty to *act* on an application." *Id.* (emphasis in original).

In addition, under the APA, courts may compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706. Accordingly, this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because of the applicability of the Mandamus Act and the APA to Plaintiffs' Amended Complaint.

*First*, Defendants do not dispute that 3 out of the 4 Plaintiffs are *Mexican* citizens, and accordingly, they **are not subject to the hold imposed by the Policy Memorandums**. Defendants also do not contest that Forms I-765, I-131, and I-485 are well beyond USCIS's median processing times. Instead, Defendants rely on *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008) for the proposition that "[t]he Eleventh Circuit has del that 'should' is 'permissible, rather than mandatory language'" when referring to the 180-day timetable that Congress set forth in 8 U.S.C. § 1571. However, the *Lambert* decision had nothing to do with a lawsuit under the

6

APA or the Mandamus Act; rather, that case dealt with the adjudication of a motion to compel arbitration in an alleged age and race discrimination case brought by a former employee against an employer.  *Id.*  Defendants also cite to *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (S.D. Fla. 2023)[2] for the same proposition, but that decision also incorrectly cites the *Lambert* decision, which has nothing to do with the claims at issue in this case.

*Second*, all of Plaintiffs' Forms were filed on **April 30, 2025** [ECF No. 18-2].  At the time of filing the petitions subject to this action (*i.e.*, 2025), the median processing time published by USCIS on its website for Form I-765 is **2.8 months,** whereas the median processing time for Form I-131 is **6 months** and the median processing time for Form I-485 based on employment-based adjustment applications is **8.8 months**.  *See* USCIS Historical  National Median Processing Time for all USCIS Offices for Select Forms by Fiscal Year, available at https://egov.uscis.gov/processing-times/historic-pt (last visited Feb. 23, 2026).  Thus, as of today, Plaintiffs' I-765s have been pending for **almost 7 months** beyond normal processing times whereas Plaintiffs' I-131s have been pending **for almost 4 months** beyond normal processing times.  Moreover, according to USCIS published data, the adjudication time for a Form I-765 is about **12 minutes** while a Form I-131 takes approximately **15 minutes** to process, as noted in 84 FR 62292.  *See* https://www.govinfo.gov/content/pkg/FR-2019-08-12/pdf/2019-17099.pdf (last visited Feb. 23, 2026).

In addition, the I-485 is 2 months beyond the normal processing time; however, this form cannot be adjudicated until Fuenmayor's Form I-526E is adjudicated by USCIS.  Form I-526E is

---

[2] Defendants also miscited the decision as being issued by the Eleventh Circuit by including the wrong cite as *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (11th Cir. 2023) when in fact the decision was issued by District Judge Kathleen M. Williams.  Motion to Dismiss at pg. 5.

7

a new form issued by USCIS as a result of the EB-5 Reform and Integrity Act of 2022 ("RIA") (part of Public Law 117-103). Under the RIA, EB-5 investments made in Rural Targeted Employment Areas ("Rural TEA") require USCIS to give priority processing speed for Form I-526E,[3] which, according to recent FOIA requests, end up in I-526E approvals in under 12 months as reported in https://eb5visainvestments.com/2025/05/15/uscis-releases-i-526e-filing-data-through-january-2025-with-5-10-year-urban-backlog-nearing-rural-remains-safest-for-indian-and-chinese-investors/ (last accessed on Feb. 23, 2026).  There has been reporting that Form I-526E is typically adjudicated in 3 to 9 months, with an average of **5 months** (here, the I-526E has been pending for **10 months**).  *See* https://www.eb5united.com/eb5-visa/timelines-process/.

Accordingly, Defendants' reliance in mandamus decisions set on page 7 of the Motion to Dismiss regarding I-526 EB-5 petitions ***pre*-RIA** are not persuasive, and, frankly, intellectually dishonest, as Form I-526E is a different application, and even more so in this case, where Fuenmayor made an investment in a Rural TEA [ECF No. 18-1, Fuenmayor ¶¶ 7-9] under a revised statutory scheme per the RIA which gives priority processing to Forms I-526E for investments in Rural TEAs.

Further, Defendants' reliance on *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419 (11th Cir. 2009) is also misplaced.  As noted in the first paragraph of the *Sands* decision, "[i]t is clear from the complaint, however, that what Plaintiffs seek is a *favorable* adjudication.  The complaint does not allege that Defendants have failed to act, or that there has been unreasonable delay in action on the applications.  What is complained of is denial of applications, revocation of applications and threats to revoke applications." *Sands v. U.S. Dept. of Homeland Sec.*, 308 Fed. Appx. 418, 419 (11th Cir. 2009) (emphasis in original).

---

[3] 8 U.S.C. § 1153(b)(5)(E)(ii)(I).

Furthermore, Defendants' reliance in *Tetelain v. Jaddou*, No. 23-60742-CIV, 2023 WL 9787562, at *3 (S.D. Fla. Nov. 27, 2023) is equally misplaced because that case dealt with waiver petitions filed pursuant to Form I-601 and "Congress specifically stripped the courts of jurisdiction over the Attorney General's consideration of waiver applications: 'No court shall have jurisdiction to review a decision **or action** by the Attorney General regarding a waiver under this clause.' 8 U.S.C. § 1182(a)(9)(B)(v)." *Tetelain v. Jaddou*, No. 23-60742-CIV, 2023 WL 9787562, at *4 (S.D. Fla. Nov. 27, 2023) (emphasis added). The *Tetelain* court concluded that the pace of decisions is well within the definition of "action" by the agency. *Id.*

Finally, nothing in the Immigration and Nationality Act ("INA") authorizes USCIS to suspend adjudications *en masse*, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over t**he entry of foreign nationals to the United States** into a *wholesale domestic adjudication moratorium*. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits, through 8 U.S.C. § 1152(a)(1)(A), nationality-based discrimination in the allocation of immigration benefits.

For the reasons set out above, the Court has subject matter jurisdiction over this action and deny in its entirety the Motion to Dismiss for lack of subject-matter jurisdiction.

### B. Plaintiffs' Adequately Stated a Claim for Relief under the APA

In *ZAHRA SHOKRI VARNIAB, et al., Plaintiffs, v. JOSEPH B. EDLOW, et al., Defendants.*, No. 25-CV-10602-SVK, 2026 WL 485490, at *11 (N.D. Cal. Feb. 20, 2026) (a full copy of the decision has been filed here as ECF No. 8), the Court held that:

> Under section 706(1) of the APA, a plaintiff must identify a "*discrete* agency action" that the agency is legally "*required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). As discussed in greater detail in section II.B. above, 8 U.S.C. § 1255(a) provides that the status of certain aliens "may be adjusted by the Attorney General, in [her] discretion and under such regulations as [she] may prescribe, to that of an alien lawfully admitted for permanent residence" if the alien applies for such adjustment

and other requirements are satisfied. The regulations concerning adjustment of status require that the applicant "be notified of the decision" on his or her application for adjustment of status "and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i). Courts have concluded that this regulation establishes a "mandatory duty to act" on Form I-485 applications for adjustment of status. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Wang*, 550 F. Supp. 2d at 1258.

As also discussed in section II.B. above, the filing of a Form I-485 application for adjustment of status does not by itself authorize employment, and applicants for adjustment of status therefore need to apply for employment authorization. *See* 8 CFR 274a.12(c)(9). A footnote in PM-0194 (the second Policy Memorandum issued on January 1, 2026) acknowledges this relationship between Forms I-485 and I-765, stating that "when USCIS approves an individual's Form I-485, any associated or underlying applications, such as Form I-765, will be automatically terminated, as the benefit provided by the ancillary form is no longer necessary." PM-0194 at 5 n.17. Defendants admit that Plaintiffs' Form I-765 applications for employment authorization are "ancillary" to their Form I-485 applications. Dkt. 21 at 7. Defendants further admit that final adjudication of both sets of applications by Plaintiffs is on hold pursuant to PM-0192. *Id.*

In their opposition to the motion for preliminary injunction, Defendants attempt to argue that there is no duty to decide adjustment of status applications. *See* Dkt. 21 at 9. Instead, they argue that "adjustment of status is a discretionary decision pursuant to 8 U.S.C. § 1255 that is unreviewable by a court." *Id.* (citing *Patel*, 596 U.S. at 347). The Court has already analyzed and rejected this argument. *See* section III.A. above. As explained, although Defendants have discretion as to whether to grant or deny particular applications for immigration benefits, they do not have discretion to indefinitely and categorically delay or withhold adjudication of such applications. *See Singh*, 470 F. Supp. 2d at 1067 ("there is a difference between the [agency's] discretion over *how* to resolve an application and the [agency's] discretion *whether* it resolves an application" (emphasis in original)).

*See ZAHRA SHOKRI VARNIAB, et al., Plaintiffs, v. JOSEPH B. EDLOW, et al., Defendants.*, No. 25-CV-10602-SVK, 2026 WL 485490, at *11-12 (N.D. Cal. Feb. 20, 2026).

Contrary to Defendants' assertion, Plaintiffs have shown, as set out in more detail above, that Defendants' delay has been unreasonable and outside their own published processing times. Moreover, the Policy Memorandums apply an *indefinite* hold, which is unlawful and discriminatory. In fact, the President of the United States has unequivocally declared that he would *permanently* pause migration a few days prior to the issuance of the Policy Memorandums.[4]

---

[4] On November 28, 2025 President Trump stated: "I will permanently pause migration from Third World Countries." Truth Social, @realDonaldTrump (Nov. 28, 2025, 9:56 AM).

10

Additionally, Plaintiffs are suffering sufficient prejudice as set out in their *Expedited* Motion for Preliminary Injunction [ECF No. 18] and supporting exhibits all of which are incorporated herein by reference. Accordingly, Plaintiffs have adequately stated a claim under the APA.

### C. Plaintiff Fuenmayor Has Standing

Defendants argue that Plaintiff Fuenmayor lacks standing because he cannot prove redressability. This argument is fatally flawed because the Court has jurisdiction to compel Defendants to make a decision if that decision is unlawfully withheld. 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). A plaintiff can proceed under section 706(1) only where she "asserts that an agency failed to take discrete agency action that is required to take." *Norton*, 542 at 64.

The hold on adjudication is not committed to unreviewable agency discretion. While the Secretary has broad authority to manage the lawful immigration system, that authority does not extend to indefinitely withholding decisions on pending applications without statutory authorization. The regulation at 8 C.F.R. § 103.2(b)(18) imposes a non-discretionary duty with a framework for both the timing and manner of withholding adjudication. Absent compliance with that regulation's specific procedural requirements, judicial review is not precluded.

Plaintiff Fuenmayor has sufficiently alleged that he can demonstrate redressability because if the Court orders Defendants to adjudicate his applications, Defendants must comply with that order. The fact that Defendants have adopted a policy of withholding adjudication does not render that policy unreviewable or make Fuenmayor's injury unredressable.

### D. The Policy Memorandums' Hold is Arbitrary and Capricious

Plaintiffs' third cause of action alleges that Defendants' decision to withhold adjudications pursuant to PM-0192 was arbitrary and capricious. FAC ¶¶ 109-112. The APA authorizes courts

to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The touchstone of arbitrary and capricious review under the APA is reasoned decisionmaking." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (internal quotation marks and citations omitted). "That means an agency's action can only survive arbitrary or capricious review where it has articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks and citations omitted). "[I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decisionmaking is insufficiently reasoned. *Id.* at 492 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Important aspects that the agency must consider include "the costs as well as the benefits" of the agency action. *State Farm*, 463 U.S. at 54.

      The background section of PM-0192 states that "[r]ecently, the United States has seen what a lack of screening, vetting, and prioritizing expedient adjudications can do to the American people," citing two incidents of violence in 2024 and 2025 that involved Afghan nationals. ECF 18-1 at 2. PM-0192 explains that "[i]n light of identified concerns and the threat to the American people, USCIS has determined that a comprehensive re-review, potential interview, and re-interview of all aliens from high-risk countries of concern who entered the United States on or after January 20, 2021 [and possibly outside this timeframe] is necessary." *Id.* The Policy Memorandum further explains that "[t]o assess vulnerabilities during this process, and in order to conduct a comprehensive review of all policies, procedures, and guidance, USCIS has determined

that it must implement an adjudication hold on all pending asylum applications, regardless of the alien's country of nationality, as well as pending benefit requests filed by aliens from high-risk countries outlined in PP 10949." *Id.* PM-0192 states that the hold will remain in effect "until lifted by the USCIS Director through a subsequent memorandum." *Id.* at 2-3. Plaintiffs' arbitrary and capricious claim focuses on the hold component of PM-0192 rather than other portions of the Policy Memorandum that anticipate implementation of new re-review processes and a comprehensive review of all policies, procedures, and guidance. *See* FAC ¶ 6; ECF No. 18-1 at 2. It is undisputed that by placing a hold on final adjudication of immigration benefit applications from applicants from the countries that are subject to PM-0192, the USCIS departed from its existing policies.

"Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). At a minimum, an agency that "changes its existing position" must "display awareness that it is changing position and show that there are good reasons for the new policy.' " *Id.* (internal quotation marks and citation omitted). An agency undertaking "policy change" must also provide "a reasoned explanation ... for disregarding facts and circumstances that underlay or were engendered by the prior policy," including any "serious reliance interests" stemming from the prior policy. *Id.* at 222 (citation omitted). "[A]n unexplained inconsistency in agency policy is a reason for holding [a new action] to be an arbitrary and capricious change from agency practice." *Id.* (citation omitted).

Arguably, the USCIS "displays awareness that it is changing position" when it states in PM-0192 that the agency "has considered that this direction may result in delay to the adjudication of some pending applications ..." ECF No. 18-1 at 3. However, the agency must also provide a

13

"reasoned explanation" for disregarding "serious reliance interests" stemming from the prior policy. *Encino Motorcars*, 579 U.S. at 222. The agency must also show consideration of "alternatives ... within the ambit of the existing policy." *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotation marks and citation omitted). Defendants have failed to show that these requirements are satisfied.

PM-0192 states that USCIS has "weighed that consequence [from delayed adjudication of some pending applications] against the urgent need for the agency to ensure that applicants are vetted and screened to the maximum degree possible" and "[u]ltimately, USCIS has determined that the burden of processing delays that will fall on some applicants is necessary and appropriate in this instance, when weighed against the agency's obligation to protect and preserve national security." ECF No. 18-1 at 3. This language is merely conclusory and as such provides no explanation as to how USCIS "weighed" the competing factors and "determined" that the burdens imposed by the hold are necessary. It provides no indication that the agency actually considered the consequence of indefinitely delaying final adjudication of pending applications. Nowhere does PM-0192 reflect that the agency considered the professional and other consequences and burdens imposed on applicants such as Plaintiffs.

Notably, the hold component of PM-0192 goes far beyond Executive Order 14161 ("EO 14161) and the Proclamation that PM-0192 purported to implement. Both EO 14161 and the Proclamation focused on restricting the *entry* of aliens from 19 countries deemed to be high-risk, reciting the President's authority under INA 212(f) to suspend or restrict the entry of aliens from 19 high-risk countries. But the adjudicatory hold extends far beyond that context because it applies to nearly all pending benefit requests from applicants such as Plaintiffs *who have already been admitted to the United States. See* ECF No. 18-1 at 1. There is no evidence that Defendants

considered reasonable alternatives to the expansive hold policy. *See AIDS Vaccine Advoc. Coalition v. United States Dep't of State*, 766 F. Supp. 3d 74, 82 (D.D.C. Feb. 13, 2025) ("Defendants have not offered any explanation for why a blanket suspension of all congressionally appropriate foreign aid, which set off a shockwave and upended reliance interests for thousands of agreements with businesses, nonprofits, and organizations around the country, was a rational precursor to reviewing programs.").

Accordingly, Plaintiffs have properly stated a claim under the APA that the adjudicatory hold component of PM-0192 is arbitrary and capricious.

### E.  Defendants have Exceeded Statutory Authority and/or Acted Contrary to Law

To enact regulations that have the force of law, federal agency ordinarily must abide by the notice-and-comment procedures prescribed in the APA.  5 U.S.C. § 553(b).  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979) ("legislative" rules –those that are "binding" or have the "force of law" –must be promulgated through the procedures set forth in the Administrative Procedure Act (citation and internal quotation marks omitted)).  The agency must publish a notice of the proposed regulation, offer the public an opportunity to voice comments and concerns, consider and respond to feedback, and include in the final regulation a "concise general statement of" the basis and purpose of the regulation.  5 U.S.C. § 553(c).  This process "gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes –and it affords the agency a chance to avoid errors and make a more informed decision."  *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019).

In the area of immigration policy, "[c]ourts require agencies to engage in notice and comment rulemaking when implementing policy changes with substantive consequences for refugees and other immigrants." *Doe v. Trump*, 288 F. Supp. 3d 1045, 1073 (W.D. Wash. 2017)

(on motion for preliminary injunction, finding that plaintiffs were likely to succeed on claim that agencies should have engaged in APA rulemaking before issuing a memorandum that (1) indefinitely suspended certain refugees from entering the United States, and (2) suspended for at least 90–days the entry of refugees who are nationals of, and stateless persons who last habitually resided in, 11 particular countries that had been identified as posing a higher risk to the United States).

Defendants do not dispute that the policy changes set forth in PM-0192 have substantive consequences for immigrants. Defendants concede that notice-and-comment procedures were not followed before promulgating the PM-0192. Moreover, Defendants also fail to invoke any of the exceptions to the notice-and-comment procedures, such as the exceptions for interpretative rules, general statements of policy, and rules of agency organization, procedure or practice. *See* 5 U.S.C. § 553(b)(4)(A). Accordingly, Plaintiffs have properly asserted that Defendants failed to follow the procedures set out in the APA.

Defendants' sole argument in support of the failure to follow the APA procedures is that the President has authority under section 212(f) of the INA (8 U.S.C. § 1182(f)) to "suspend or restrict the entry of any aliens deemed detrimental to U.S. interest." However, that authority to limit *entry* of aliens does not support issuance of PM-0192 to the extent the Policy Memorandum affects the ability of aliens, such as Plaintiff, who have already been lawfully admitted to the United States.

### F. The Policy Memorandums Violate the INA and/or the Equal Protection Component under the Fifth Amendment Due Process Clause

Plaintiffs' fifth and sixth causes of action allege that by subjecting Plaintiffs' applications for immigration benefits to different procedures than other applications based solely on Plaintiffs' country of origin, PM-0192 discriminates on the basis of national origin in violation of the INA, 8

16

U.S.C. § 1152(a)(1)(A), and the Equal Protection component of the Fifth Amendment. FAC ¶¶ 122-131. 8 U.S.C § 1152(a)(1)(A) provides that with limited exceptions, "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." Meanwhile, the Fifth Amendment " 'contains an equal protection component prohibiting' the federal government from engaging in invidious discrimination against persons in the United States" that applies to "all persons within the territorial jurisdiction [of the United States, without regard to any differences ... of nationality and even if their "presence in this country is unlawful, involuntary, or transitory." *Miot v. Trump*, -- F.3d --, 2026 WL 266413, at *30 (D.D.C. Feb. 2, 2026) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976), *Yick Wo v. Hopkins*, 118 U.S. 336, 369 (1886), and *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)).

The FAC alleges facts concerning the elements of Plaintiffs' discrimination-related claims. On its face, PM-0192 treats different groups of applicants for immigration benefits differently based on their national origin. *See* ECF No. 18-1 at 1 (directing USCIS personnel to "[p]lace a hold on pending benefit requests for aliens from countries listed in" the Proclamation). Defendants have not addressed or rebutted Plaintiffs' showing on these claims. Moreover, although "the Government may treat people differently if it has sufficient justification," *Miot*, 2026 WL 266413, at *30, Defendants have not addressed whether their purported justifications for the national origin discrimination set forth in PM-0192 meet Constitutional standards.

## **CONCLUSION**

For the reasons set out above, the Court should deny the Motion to Dismiss in its entirety.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order: (i) denying Defendants' Motion to Dismiss [ECF No. 23]; (ii) ordering Defendants to answer Plaintiffs'

Amended Complaint within twenty (20) days of the Court's order; and (c) granting any further relief that the Court deems just and proper.

Dated: February 24, 2026                                   Respectfully submitted,

                                                                              LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
1200 Brickell Avenue, Suite 700
Miami, Florida 33131
E-mail: rodrigo@rdasilvalaw.com
Telephone:   (305) 615-1434
Facsimile:    (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.
*Counsel for Plaintiffs Raymundo Alberto Fuenmayor Perozo, Berenice Sotelo Godoy, Matteo Fuenmayor Sotelo, and Danna Paola Fuenmayor Sotelo*